[Cite as *State ex rel. Sunesis Constr. Co. v. Indus. Comm.*, 2015-Ohio-3973.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

State ex rel. Sunesis Construction Co., :

        Relator, :

v. : No. 13AP-449

Industrial Commission : (REGULAR CALENDAR)
of Ohio et al.,
         :

        Respondents.

         :

D E C I S I O N

Rendered on September 29, 2015

*Dunlevey, Mahan & Furry, Douglas S. Jenks* and *Gary W. Auman,* for relator.

*Michael DeWine*, Attorney General, and *Andrew J. Alatis,* for respondent Industrial Commission of Ohio.

*Fox & Fox Co., L.P.A., Bernard C. Fox*, Jr., and *Karen P. Mitchell*, for deceased respondent Timothy Roark and his estate.

IN MANDAMUS
ON OBJECTIONS TO THE MAGISTRATE'S DECISION

LUPER SCHUSTER, J.

{¶ 1} Relator, Sunesis Construction Co. ("Sunesis"), petitions this court for a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate a commission order. The order in question grants an application for an additional award based on violations of specific safety requirements ("VSSR") in connection with the death of Timothy Roark ("claimant" or "Roark"), a Sunesis employee. In the alternative,

Sunesis seeks a writ ordering the commission to exercise continuing jurisdiction over the matter and reconsider its hearing officer's determination.

{¶ 2} This court referred the matter to a magistrate pursuant to Civ.R. 53(C) and Loc.R. 13(M) of the Tenth District Court of Appeals. The magistrate rendered a decision that includes findings of fact and conclusions of law. The magistrate's decision, which is appended hereto, recommends that this court grant the writ of mandamus requested by Sunesis. Claimant filed objections to the magistrate's decision, and the commission filed a memorandum in support incorporating claimant's objections by reference. The matter is now before the court for our independent review based on the stipulated evidence and the magistrate's decision.

## I. Facts and Procedural History

{¶ 3} We will restate the extensive facts given in the magistrate's decision only to the extent necessary for a full review of those aspects of the decision addressed in the objections. Timothy Roark worked for Sunesis on a sewer construction job in Hamilton County, Ohio known as the Cooper Creek Sewer Replacement Project. This involved extensive trenching and tunneling. Roark died while working at the bottom of a deep trench when a collapse left him almost entirely buried by moving earth. There were no eyewitnesses to the actual collapse and, although other workers were able to respond promptly, Roark died before they could extricate him. The alleged violations in this case pertain to the construction of this trench, particularly the sloping, shoring, and bracing incorporated to stabilize the sides of the excavation.

{¶ 4} The Ohio Bureau of Workers Compensation allowed the resulting death claim and awarded benefits to Roark's dependent children. The present proceedings concern only an application for additional benefits due to alleged violations of specific safety requirements by Sunesis when excavating and bracing the trench. As detailed in the magistrate's decision, the commission initially granted the VSSR application, Sunesis contested that determination, and lengthy proceedings have ensued. As a result, this is the third original action filed in this court in the matter.

{¶ 5} In the latest order of the commission, a staff hearing officer ("SHO") order issued October 4, 2012, the SHO determined that various aspects of the shoring and sloping of the trench did not comply with applicable sections of the Ohio Administrative

Code, that the resulting earth movement was the proximate cause of Roark's death, and that an additional award of compensation should be granted in the amount of 35 percent of the maximum weekly rate. The magistrate now recommends granting a writ in this case to vacate the SHO's order.

{¶ 6} The magistrate finds that the SHO's October 4, 2012 order fails to determine the degree of slope incorporated into one end of the trench and, thus, fails to examine the sufficiency of actual slope when compared to the required slope under the Ohio Administrative Code. The magistrate also concludes that the SHO erred in determining that the trench had not been designed by a "qualified person." The magistrate notes that this term is not defined in the pertinent regulations, and that as a result the SHO's conclusion that the trench should have been designed or inspected by a professional engineer is not supported. From this, the magistrate determines that the record does not support any failure by Sunesis to comply with these regulatory standards, and concludes that the commission abused its discretion when finding that the proximate cause of the accident was a failure to comply with regulatory standards in constructing the trench.

{¶ 7} Because we find that the magistrate has not applied the appropriate regulatory language when examining the site conditions leading to the accident, we adopt only the magistrate's findings of fact and modify the conclusions of law to deny the requested writ.

## II. Objections to the Magistrate's Decision

{¶ 8} Claimant sets forth the following objections to the magistrate's decision:

> [1.] The magistrate erred by finding that the staff hearing officer abused his discretion for failing to determine the degree of sloping at the trench under Table 13-1. (Appendix to OAC 4123:1-3-13(D)(1)-(2) and 4123:1-3-13(E)(1)).
>
> [2.] The magistrate erred in finding that the staff hearing officer abused his discretion in finding proximate cause, because he failed to determine the degree of sloping actually employed at the trench.
>
> [3.] The magistrate erred by finding that the commission abused its discretion in deciding that the trench was not

designed by a qualified person and that it did not meet accepted engineering requirements.

[4.] The magistrate erred by substituting his determination of disputed facts and his evaluation of the weight and credibility of the evidence in place of the commission's.

## III.  Discussion

{¶ 9}   We note from the outset of our discussion that it is both undisputed and irrelevant that Roark found himself in an exposed position at the bottom of the trench only because he had directly disregarded explicit instructions.  His supervisors had recognized the risk of this particular excavation and ordered workers to undertake all tasks, including the work attempted by Roark, while staying within the protection of a steel tubular casing driven along the bottom of the trench.  Nonetheless, a claimant's negligence bars a VSSR award only where the claimant deliberately renders an otherwise complying device noncompliant.  *State ex rel. R.E.H., Co. v. Indus. Comm.,* 79 Ohio St.3d 352, 355 (1997).  Specific safety requirements are intended to provide protection to negligent employees as well as diligent ones.  *Id.*  Unless in the present case the decedent had deliberately neutralized the shoring arrangements or slope of the affected trench, the extent to which the decedent was acting against instructions when he ventured into the unstable trench is not relevant to the VSSR determination.  *See, e.g.*, *State ex rel. Quality Tower Serv., Inc. v. Indus. Comm.*, 88 Ohio St.3d 190, 192 (2000) (employer exonerated from VSSR liability only because an employee had removed part of the scaffold required by a specific safety requirement).

### A.  First Objection — Degree of Slope

{¶ 10}   The first objection argued by claimant is that the magistrate erred by finding that the SHO abused his discretion by failing to determine the actual degree of slope at the unbraced end of the trench where the accident occurred.  The final SHO order issued in this case on October 4, 2012 described this "fourth wall" of the excavation as consisting of "soft material, Class C soil with ground water.  The Employer attempted to shore [sic] this side of the trench/excavation by sloping the wall enough to ensure that a cave-in could not occur."  (Oct. 4, 2012 SHO Order, 2.)  The SHO then examined certain sections of the Ohio Administrative Code to determine whether the trench structure

complied with regulations governing sloping or shoring of excavations. The SHO concluded that "the sloped side of the trench/excavation was not sloped by means of sufficient strength [sic] to protect the employee working in it. Further, the Staff Hearing Officer find[s] that the slope did not meet accepted engineering requirements." (Oct. 4, 2012 SHO Order, 3.)

{¶ 11} Ohio Adm.Code 4123:1-3-13(D)(1) and (2) address safety measures for "trenches" and Ohio Adm.Code 4123:1-3-13(E)(1) addresses safety measures for "excavations." The relevant definitional provisions make clear that a trench is a subtype of excavation whose "depth is greater than the width, but the width of a trench at the bottom is no greater than fifteen feet." Ohio Adm.Code 4123:1-3-13(B)(11). Based on these definitions, the regulations for trenches and excavations must to some extent overlap and be read in pari materia. Subsections (D) and (E) both incorporate references to an appendix, Table 13-1, which specifies five different degrees of slope for different types of ground, ranging from solid rock to loose sand. These table specifications, however, provide only "minimum requirements" for shoring and bracing. Ohio Adm.Code 4123:1-3-13(D)(5)(a). The table itself specifies that as an exception to the five described ground types and associated amounts of slope, "non-homogenous soils require Shoring and Bracing. * * * The presence of ground water requires special treatment." Ohio Adm.Code 4123:1-3-13, appendix, Table 13-1.

{¶ 12} We agree with claimant's objection to this aspect of the magistrate's decision regarding the absence of a factual finding of slope in the collapsed trench. We find that the SHO did not need to ascertain the specific angle of slope existing in the trench as a prerequisite to finding that the trench did not meet requirements. The SHO's order in this case clearly specified that the soil on the unbraced end of the trench was wet[1] and presented the potential for moving ground requiring "special treatment." The SHO therefore did not need to refer to the slope specifications of Table 13-1 for different types of ground because wet ground specifically falls outside the table guidelines.

---

[1] Although the SHO's order initially mentions "Class C" soil, which is an OSHA standard and not referenced in the Ohio Administrative Code sections cited above, the order does clearly state that the soil contained ground water.

{¶ 13} Although the SHO's order contains an obvious clerical error when it states that the excavation was not "sloped by means of sufficient strength," where the SHO clearly intended to parallel the regulatory phrase "sloped *or shored* by means of sufficient strength," the meaning is readily ascertainable, and elsewhere the SHO does refer to the possibility of either enhanced bracing or sloping. The magistrate focused on the proposition that the SHO's order found that the "sloping" was not of "sufficient strength." This injects uncertainty into the SHO's order when there is none; the SHO clearly intended to state, as is spelled out elsewhere in the order, that the sloping was not of sufficient stability nor the bracing of sufficient strength (in fact, entirely absent on this end of the trench) to ensure safety and compliance with Ohio Adm.Code 4123:1-3-13(D) and (E). The testimony in the record clearly corroborates the reference to Type C soil as soft, wet, non-homogenous, saturated soil that presented an increased risk of cave-in. The reference to "Type C soil" is redundant once the SHO had referred to groundwater and wet soil, which took the conditions in the trench outside the purview of Table 13-1 and imposed a general requirement of additional measures necessary to ensure stability and safety. We accordingly find that the magistrate incorrectly analyzed the significance of the pre-accident degree of slope in the trench and sustain claimant's first objection.

### B. Second Objection — Proximate Cause

{¶ 14} The second objection brought by claimant addresses the magistrate's conclusion that the SHO failed to make a supported finding that the violations were the proximate cause of the accident. This conclusion by the magistrate is entirely based on the failure to establish the degree of slope of the exposed end of the trench. Because our disposition of the first objection establishes that the degree of slope per se is not controlling in the matter, this determination of a lack of proximate cause by the magistrate becomes unsupported. Nonetheless, Sunesis asserts there is no evidence in the record to pinpoint the original location of the soil that collapsed to bury Roark, and for this reason there is no evidence to support a finding that the failure to adequately slope or brace the trench was the proximate cause of his death.

{¶ 15} The record contains the hearing or deposition testimony of various Sunesis employees regarding conditions at the accident site. Roark's brother, Anthony Roark, was a site foreman and his direct supervisor on the Cooper Creek job. Chuck Renken was

Sunesis's director of human resources and safety.  Jeffrey Darrah was a licensed professional engineer and Sunesis's vice president.  Gary Bradford was a Sunesis field superintendent for the Cooper Creek sewer project.  The October 4, 2012 SHO's order specifically states that "the Staff Hearing Officer finds that the sloped wall of the trench/excavation caved in on the Decedent resulting in his death.  This finding is based on the testimony of Mr. Chuck Renken  * * * and Mr. Jeffrey Darrah * * *.  This finding is also based upon the photographs on file which depict the scene of the accident before the scene was disturbed."  (SHO Order, 2.)

{¶ 16} Claimant and the commission concede that there was no direct observation of the collapse as it happened.  Even in the absence of direct observation, however, the stipulated facts regarding the nature of the shoring on the three other sides of the excavation, combined with admissions from Renken, Darrah, and Anthony Roark at various points in the record that the sloped end was inadequate, could support the SHO's conclusion that the failure to adequately brace or slope the fourth side of the trench was the proximate cause of the accident.  In fact, Renken did more than describe the inadequate state of the trench.  Although he cautioned that no one could ascertain for certain the path of the moving dirt, he was willing to opine regarding the likely source of the collapse: "My belief is it could not have come from the side underneath the trench box. Just the physics of that would not have worked out to put it in the position that he was found in. The material appears to have come from behind him  * * * or above him and not from in front of him."  (June 10, 2008 hearing testimony, 19.)  "I don't think it came from beneath the plate.  It came from up on the end down on top of him." (June 10, 2008 hearing testimony, 67.)  "Again  I don't know for sure where it came from.  Based on this picture [of the scene] it looks like the void is, you know -- on the end of the trench where it must come from."  (June 10, 2008 hearing testimony, 69.)

{¶ 17} The testimony of these Sunesis employees, along with the photographs referenced by the SHO, constitute some evidence to support the commission's determination that the deficient trench design was the proximate cause of the collapse. We sustain claimant's second objection to the magistrate's decision and do not adopt the magistrate's conclusions regarding proximate cause.

### C. Third Objection — Design

{¶ 18} Claimant's third objection asserts that the magistrate erred when he found that the commission abused its discretion in concluding that the trench was not designed by a "qualified person" and did not meet accepted engineering requirements. Ohio Adm.Code 4123:1-3-13(E)(2) and (4) provide that supporting systems, including shoring, shall be designed "by a qualified person and shall meet accepted engineering requirements," and "slopes, and faces of all excavations shall meet accepted engineering requirements." The parties disagree as to the import of this language.

{¶ 19} Sunesis argues that the reference to accepted engineering requirements does not mean that the trench must be designed and inspected by a licensed professional engineer. Claimant and the commission point out that various points of testimony from Sunesis employees Anthony Roark, Bradford, and Renken indicate that the trench satisfied neither OSHA safety standards nor Sunesis's own safety requirements. Both of these require that excavations in excess of 20 feet of depth incorporate a protective system designed by a professional engineer. Anthony Roark testified that he designed the trench in question, that he is not a licensed professional engineer, and the trench was noncompliant. Bradford testified that the trench did not meet standards because the box-and-plate protection on the sides did not extend all the way to the bottom and the trench lacked an egress ladder. Bradford was aware that the condition of the trench led his superiors at Sunesis to issue standing instructions for all personnel to avoid working in the trench except in the protected volume provided by the end of the pipe casing.

{¶ 20} Without determining whether Ohio Adm.Code 4123:1-3-13(E)(2) and (4) require actual detail design by a licensed professional engineer in order to meet accepted engineering standards, we find that there was some evidence before the commission to find that, regardless of who undertook design of the trench, it did not meet accepted OSHA or Sunesis internal standards. The SHO had the discretion to refer to these standards in determining whether the trench complied with the Ohio Administrative Code requirement of design by a qualified person to meet accepted engineering standards. We sustain claimant's third objection.

### D. Fourth Objection – Disputed Facts

{¶ 21} Finally, claimant's fourth objection asserts that the magistrate improperly substituted his view of the weight and credibility of the evidence in place of the commission's when resolving disputed facts. The disputed facts in question concern the extent to which Sunesis intended for any employee to work in an exposed position in the trench, given its unsafe nature. Evaluation of the VSSR claim in this case did not require a finding that Sunesis ordered Roark into the trench, nor a finding that Sunesis took inadequate measures to prevent an incautious employee from venturing into the trench. This factual issue is moot. *R.E.H. Co.*

## IV. Conclusion

{¶ 22} In summary, in response to claimant's first three objections to the magistrate's decision, we adopt the factual findings of the magistrate to the extent outlined above, reject the conclusions of law devolving therefrom, and deny the requested writ. Relator's request for a writ of mandamus requesting that the commission reconsider its refusal to exercise continuing jurisdiction, which was found moot by the magistrate, is also denied.

*Objections sustained; writ denied.*

DORRIAN and BRUNNER, JJ., concur.

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. Sunesis Construction, | : | |
| Relator, | : | |
| v. | : | No. 13AP-449 |
| Industrial Commission of Ohio, et. al, | : | (REGULAR CALENDAR) |
| | : | |
| Respondents. | : | |
| | : | |

## MAGISTRATE'S DECISION

### Rendered on December 31, 2014

*Dunlevey, Mahan & Furry, Douglas S. Jenks* and *Gary W. Auman,* for relator.

*Michael DeWine,* Attorney General, and *Andrew J. Alatis,* for respondent Industrial Commission of Ohio.

*Fox & Fox Co., L.P.A.,* and *Bernard C. Fox, Jr.,* for deceased respondent Timothy Roark and his estate.

IN MANDAMUS

{¶ 23} In this original action, relator, Sunesis Construction, requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate the October 4, 2012 order of its staff hearing officer ("SHO") that granted the application filed on behalf of Timothy Roark ("decedent" or "claimant") for an additional award for violations of specific safety requirements ("VSSR"), and to enter an order denying the VSSR application. Also, relator requests that the writ order the commission to vacate its March 14, 2013 order refusing to exercise continuing

jurisdiction over the SHO's order of October 4, 2012, and to enter an order exercising its continuing jurisdiction.

Findings of Fact:

{¶ 24} 1. On July 31, 2005, decedent was killed in a trench while working for relator.

{¶ 25} 2. This is the third original action filed in this court regarding the VSSR award.

{¶ 26} 3. In its brief, relator presents what is captioned "Facts." *See* Loc.R. 13(J)(3) pertaining to briefs filed in an original action. Without adopting all of relator's factual assertions as true, the magistrate, nevertheless, finds relator's version of the facts relating to the trench site to be useful to an understanding of this action:

> The work injury occurred on Sunday July 31, 2005, when the injured worker, Tim Roark, worked for Sunesis at a sewer-pipe jobsite on Galbraith Road in Hamilton County, Ohio.
>
> During the week before the accident, Sunesis had dug a trench (the "West trench") from which to push a four-foot diameter casing through the ground, toward the East, using a trackhoe. * * * The casing is a steel pipe which would eventually house a smaller pipe. The casing was big enough for employees to work in and even lay tracks inside for a "tram car" to carry dirt and debris through it.
>
> Sunesis did not plan to dig a trench where this accident occurred; the plan was to push the casing from the existing trench horizontally through the ground without digging a trench. * * * However, while pushing the casing through the ground from the existing trench with the trackhoe, they hit an obstruction. * * * The obstruction turned out to be a large piece of concrete, approximately fourteen feet long and ten feet deep. * * * Unable to simply extract the obstruction, on Friday July 29, 2005, Sunesis began to dig a path with a trackhoe for the casing to run alongside the obstruction.
>
> This digging resulted in a second trench (the "East Trench") where the accident occurred on Sunday July 31, 2005. * * * As such, by Saturday, there were two separate trenches, the West trench and East trench, each running east and west on the same straight line.

The East trench was approximately 20 feet deep, 20 feet long, and six-feet wide. * * * The South side of the East trench consisted entirely of concrete and rock, from the bottom of the trench to the top at ground level. * * * This was the obstruction Sunesis had encountered when pushing the casing from the West trench.

The north side of the East trench consisted of soil. * * * Sunesis inserted a certified ten-foot tall trench box that extended from ground level, down approximately ten feet to where it hit the concrete. * * * Sunesis did not shore the South side (the concrete and rock side) of the East trench under the trench box because it was solid concrete and rock. * * * On the north side, Sunesis inserted and braced steel plates (10 feet wide and 20 feet high), between the trench box and the trench wall; the plates extended from the top of the trench, behind the trench box, down to the trench floor.

Anthony Roark, the claimant's brother [and] foreman, * * * sloped the west end of the East trench. * * * He also inserted a steel plate at that end. * * * The other end of the East trench, the east end, connected with another previously dug trench.

Despite the shoring, bracing, and sloping of the East trench, as of Saturday July 30, 2005, Sunesis decided that no employees should enter it. Sunesis vice president, Steve Abernathy, had directed Sunesis employees to continue pushing the casing from the West trench through the East trench, and not work in the East trench itself. * * * Mr. Abernathy told Gary Bradford, a Sunesis superintendent, that no one was to enter the East trench.

Accordingly, on Saturday, Gary Bradford visited the jobsite. When he arrived, he found Anthony Roark in the East trench working without a "top man" (as safety a monitor [sic]). * * * Apparently, Anthony Roark was chiseling rock with a jackhammer, clearing a path for the casing. Gary Bradford ordered Anthony Roark out of the East trench, and instructed the entire crew to stay out, and work from inside the casing only.

* * *

As such, Sunesis planned to push the casing from the West trench through the East trench with the trackhoe that was

parked at ground level between the two trenches. Jimmy Sparks, the trackhoe operator, would literally knock it about a foot at a time toward the East, with the trackhoe bucket which he extended down into the West trench. * * * After dirt and rock accumulated inside the leading and open end of the casing as it was pushed eastward, Sunesis employees would then enter the west end of the casing, from the West trench, remove the material from the casing into the West trench using the "tram car," and then exit before Mr. Sparks would use the trackhoe to push it another foot. * * * Sunesis employees would also knock off any obstruction blocking the casing's path from inside the casing using a pneumatic hand-held device called an "air spade." * * * This process, known as "tunneling," is safe and common in the trenching industry.

Sunesis employees met on Sunday morning, July 31, 2005, and discussed the plan to push the casing all the way through the East trench with the trackhoe. * * * By that point, the four-foot diameter casing extended about five feet into the East trench, and rested on the floor. * * * They already had the pipe on hand that Sunesis would feed into the casing once they had knocked it through the East trench. * * * First, before they could proceed, however, they had to enter the casing from the West trench, and clean out debris that had accumulated while being pushed from the West trench. * * * Although Sunesis employees did that Saturday, they had not completed the task as of Sunday morning.

At no time did Sunesis decide, intend, or actually send Tim Roark or any other employee to work in the East trench on Sunday July 31, 2005. * * * The plan was to do the opposite: keep employees out of the trench. Tim Roark's only job that morning was to clean out the casing from the inside * * *.

However, when the casing hit the concrete obstruction earlier in the week, the leading edge was bent. It was Leon Trisdale's job to use a cutting torch and remove the bent end * * *.

The plan called for Leon Trisdale to enter the casing and cut the bent end from inside the casing * * *.

* * *

> Before leaving to get safety glasses to cut the casing, Leon Trisdale saw Tim Roark standing at the west end of the East trench holding a cutting torch.
>
> * * *
> Tim Roark decided on his own to leave the casing, and step into the East trench with the cutting torch.
>
> Before Leon Trisdale went to get his safety glasses to work on the bent casing, he looked down into the trench and saw Tim Roark standing at the edge of the casing holding the cutting torch. * * * He pleaded with Tim Roark to get out of the trench * * *.
>
> Apparently Tim Roark did not listen. When Leon Trisdale returned a few moments later, he discovered Tim Roark outside the casing nearly covered in debris.

(Relator's Brief, 8-18.)

{¶ 27} 4. The Ohio Bureau of Workers' Compensation ("bureau") allowed the death claim (No. 05-849445) and also awarded benefits to decedent's dependent children.

{¶ 28} 5. On January 29, 2007, a VSSR application was filed on behalf of decedent and his dependents.

{¶ 29} 6. The VSSR application prompted an investigation by the bureau's Safety Violations Investigation Unit ("SVIU").

{¶ 30} 7.  In the year 2006, Lowell Roark, the administrator of decedent's estate, filed an intentional tort action in the Butler County Court of Common Pleas.  That action generated multiple deposition transcripts.

{¶ 31} 8. The SVIU special investigator obtained copies of the deposition transcripts from the intentional tort action.  He also obtained photographs of the accident scene taken by the fire department of the Deer Park Silverton Joint Fire District.

{¶ 32} 9. On July 11, 2007, the SVIU investigator issued his report of investigation.  The deposition transcripts and fire department photographs were made exhibits to the report.

{¶ 33} 10. On June 10, 2008, the VSSR application was heard by a commission SHO. The hearing was recorded and transcribed for the record. Three witnesses testified at the hearing. Chuck Renken, relator's director of field support services was called to testify as on cross-examination by decedent's counsel.

{¶ 34} Jeffrey S. Darrah, relator's vice president, was called to testify under direct examination by relator's counsel. Mr. Darrah has a bachelor's degree in civil engineering and he is a registered professional engineer.

{¶ 35} The third witness called to testify at the June 10, 2008 hearing was Wayne Haddix, who is a self-employed expert with a company called "Road to Safety."

{¶ 36} 11. Following the June 10, 2008 hearing, the SHO issued an order granting the VSSR application. The SHO found six violations of specific safety rules applicable to trenches and excavations.

{¶ 37} 12. Relator moved for rehearing pursuant to Ohio Adm.Code 4123-3-20(E).

{¶ 38} 13. On November 21, 2008, another SHO mailed an order denying relator's motion for rehearing.

{¶ 39} 14. On December 5, 2008, relator moved for so-called reconsideration. On January 8, 2009, the three-member commission mailed an order denying reconsideration.

{¶ 40} 15. On April 29, 2009, relator filed in this court a mandamus action that was assigned case number 09AP-423. The action was assigned to a magistrate.

{¶ 41} 16. On May 12, 2010, the magistrate issued his magistrate's decision. The magistrate recommended that this court issue a writ of mandamus.

{¶ 42} 17. On September 21, 2010, this court issued its decision in case number 09AP-423. Adopting the magistrate's decision, this court issued a writ of mandamus, explaining:

> The objections filed by both decedent's estate and the commission contend that the order of the staff hearing officer ("SHO") complies with *Noll* because the SHO stated the evidence upon which she relied and sufficiently explained her reasoning. We disagree. As is readily apparent from a review of the SHO's order, the SHO's findings

pertaining to five of the six alleged violations, Ohio Adm.Code 4123:1-3-13(C)(2), (D)(1) and (2), and (E)(1) and (2), essentially recite the regulation without explaining specifically how relator violated the regulation, how the violation proximately caused decedent's death, and what evidence the SHO relied upon in making such finding. Regarding the remaining violation, Ohio Adm.Code 4123:1-3-13(D)(9), the evidence relied upon by the SHO is insufficient to establish the violation and proximate cause. Thus, we agree with the magistrate's determination that the SHO's order does not comply with the requirements of *Noll* with regard to five of the six violations, and lacks evidentiary support with regard to the remaining violation.

\* \* \*

We issue a writ of mandamus ordering the commission to vacate its order granting the VSSR application and to enter an order that adjudicates the matter in a manner in accordance with law and consistent with this decision.

*State ex rel. Sunesis Constr. v. Indus. Comm.,* 10th Dist. No. 09AP-423, 2010-Ohio-4434, ¶ 7, 10.

{¶ 43} 18. On December 16, 2010, an SHO mailed an order acknowledging this court's writ of mandamus. In accordance with the writ, the SHO vacated the SHO's order of June 10, 2008 that had granted the VSSR application. Also, the SHO's order of December 16, 2010 vacated the SHO's order mailed November 21, 2008 that had denied relator's motion for rehearing. The SHO's order of December 16, 2010 further stated:

The claim is to be set for a <u>de novo</u> hearing before a Staff Hearing Officer on the issue of the IC-9 Application for Additional Award for VSSR - Fatal, filed 01/29/2007.

The Staff Hearing Officer is to issue an order on the merits of the IC-9 Application and which complies with <u>State ex rel. Noll v. Industrial Commission</u> (1991), 57 Ohio St.3d 203. The Staff Hearing Officer is to apply the reasoning in the Tenth Appellate District Court of Appeals decision dated 09/21/2010.

The Staff Hearing Officer order will be subject to the usual rights of Administrative Rehearing in accordance with the provisions of Ohio Administrative Code 4121-3-20(C).

{¶ 44} 19.  Relator objected to the SHO's order of December 16, 2010 on grounds that this court's writ allegedly did not direct a de novo hearing.  The commission denied relator's objection.

{¶ 45} 20.  The commission's denial of relator's objection to the scheduling of a de novo hearing prompted relator to file in this court an action for a writ of prohibition. The prohibition action, filed May 17, 2011, was assigned to a magistrate.

{¶ 46} 21.  On February 21, 2012, the magistrate issued a magistrate's decision recommending that this court deny relator's request for a writ of prohibition.

{¶ 47} 22.  On May 24, 2012, this court adopted the magistrate's decision and denied the writ of prohibition.  *State ex rel. Sunesis Constr.  v. Indus. Comm.,* 10th Dist. No. 11AP-449, 2012-Ohio-2323.

{¶ 48} 23.  Earlier, following an October 6, 2011 hearing, an SHO issued an order (mailed December 15, 2011) that grants the VSSR application in part and denies the application in part.  The SHO's order finds that relator violated five specific safety rules applicable to the construction of trenches and excavations.

{¶ 49} 24.  Relator moved for rehearing pursuant to Ohio Adm.Code 4121-3-20(C).

{¶ 50} 25.  On March 13, 2012, another SHO mailed an order granting relator's motion for rehearing. The SHO's order mailed March 13, 2012 explains:

> It is the order of the Industrial Commission that the Motion for Rehearing be granted for the reason that the Employer has demonstrated that the order mailed 12/15/2011 was based on a clear mistake of law, in accordance with Ohio Administrative Code 4121-3-20(E)(1)(b).
>
> Specifically, the order finds that the wall of the trench/ excavation that collapsed was not adequately sloped or shored and the failure to adequately slope or shore the trench led to the cave-in that caused the decedent's death. Based on the finding that the lack of adequate sloping or shoring caused the decedent's death, a violation of 4123:1-3-13(D)(1) and (2) was found. However, both of these sections refer to Table 13-1 in the appendix to determine the approximate angle of repose for the sloping of the sides of excavations. This table lists the amount of sloping required based on the type of soil where the trench is dug. Therefore,

to determine by the chart the amount of sloping that was necessary it is necessary to know the type of soil involved and the amount of sloping that was done. The order fails to site the type of soil involved, stating only that it was soft material with water and there was an exposure to moving ground. Further, the order does not provide any indication of what evidence shows the amount of sloping that was done to show it was not within the amounts required per the appendix and thus the rule cited as violated. Based on this it appears there is a mistake of law and the request for rehearing is granted.

Pursuant to Ohio Adm.Code 4121-3-20, the order mailed 12/15/2011 is vacated. The Injured Worker's application is ordered set for rehearing.

{¶ 51} 26. Following an October 4, 2012 hearing, an SHO mailed an order on October 30, 2012 that grants in part and denies in part the VSSR application filed January, 2007.

{¶ 52} 27. To permit comparison of the SHO's order of October 4, 2012 with the SHO's order of October 6, 2011, the SHO's order of October 4, 2012 is reproduced here showing some italicized language. The italicized language indicates language in the October 4, 2012 order that was not contained in the October 6, 2011 order. That is, the italicized language was added by the SHO in response to the SHO's order mailed March 13, 2012 that granted rehearing. The October 4, 2012 order of the SHO, as italicized, states in part:

> The Staff Hearing Officer finds a violation of Ohio [A]dministrative Code 4123:1-3-13(D)(1) and (2), Ohio Administrative Code 4123:1-3-13(E)(1) and (2), and Ohio Administrative Code 4123:1-3-13(E)(4).
>
> The pertinent facts are as follows. The Injured Worker was employed by the Employer as a construction laborer. On 07/31/2005, the Injured Worker was working alone at the bottom of a more than twenty foot deep trench/excavation when the trench/excavation "caved in" on top of the Injured Worker resulting in his death. The actual "cave-in" was not witnessed. The Decedent was found at the bottom of the trench/excavation crushed against the pipe which ran along the bottom of the trench/excavation. He was buried up to his shoulders in dirt and debris. The coroner's report on file indicates that the cause of death was blunt force trauma to

the head and asphyxiation. The file contains pictures of the scene of the accident prior to the decedent's body being removed or the accident scene being disturbed in any manner.

The evidence on file indicates that one side of the trench/excavation was comprised of a solid concrete slab and solid shale rock. Another side of the trench/excavation was secured by steel road plates which were 10 feet wide and 20 feet high. A third side of the trench was secured by the use of a 10 foot tall trench box. The Staff Hearing Officer finds that there is no allegation that these three walls were inadequately shored.

The fourth wall of the excavation trench consisted of [soil][2] *soft material, Class C soil with ground water.* The Employer attempted to shore this side of the trench/excavation by sloping the wall enough to ensure that a cave-in could not occur. A steel plate was also inserted at the top of this wall above the sloped area.

Based upon the photographs of the accident scene, the Staff Hearing Officer finds that the steel plate was placed at the top of the trench/excavation and did not cover the sloped portions of the wall.

The Staff Hearing Officer finds that the sloped wall of the trench/excavation caved in on the Decedent resulting in his death. This finding is based on the testimony of Mr. Chuck Renken at pages 18, 19, 67, 69, and 70 of the Hearing Transcript filed 06/25/2008 and Mr. Jeffrey Darrah at pages 119-121 of the Hearing Transcript filed 06/25/2008. Mr. Renken is the Employer's Director of Human Resources and Safety and Mr. Darrah is the company Vice President. This finding is also based upon the photographs on file which depict the scene of the accident before the scene was disturbed.

The issue to be decided is twofold. First, a determination has to be made as to whether the sloped wall of the trench/excavation was properly sloped. Second, if the sloped wall is found to be improperly sloped or shored, whether the improper sloping or shoring is the proximate cause of the cave-in and the Decedent's death.

---

[2] In the October 6, 2011 order, this sentence ends with the word "soil."

Ohio Administrative Code 4123:1-3-13(D) governs trenches.

Ohio Administrative Code 4123:1-3-13(D)(1) states:

The exposed faces of all trenches more than five feet high shall be shored, laid back to a stable slope, or some other equivalent means of protection shall be provided where employees may be exposed to moving ground or cave-ins.

Ohio Administrative Code 4123:1-3-13(D)(2) states:

Sides of trenches in unstable or soft material, five feet or more in depth, shall be shored, sheeted, braced, sloped, or otherwise supported by means of sufficient strength to protect the employees working within them.
Ohio Administrative Code 4123:1-3-13(E) governs excavations.

Ohio Administrative Code 4123:1-3-13(E)(1) states:

The walls and faces of all excavations in which employees are exposed to danger from moving ground shall be guarded by a shoring system, sloping of the ground, or some other equivalent means.

Ohio Administrative Code 4123:1-3-13(E)(2) states:

Supporting systems, i.e. piling, cribbing, shoring, etc., shall be designed by a qualified person and shall meet accepted engineering requirements.

Ohio Administrative Code 4123:1-3-13(E)(4) states:

Sides, slopes, and faces of all excavations shall meet accepted engineering requirements by scaling, benching, barricading, rock bolting, wire meshing, or other equally effective means.

In the case at hand, the trench/excavation the Decedent was working in at the time of the industrial accident was over twenty feet deep. Further, the Decedent was working in soft material *Class C soil with ground water* and was exposed to moving ground or the possibility of cave-ins at the time of the industrial accident. This finding is based upon the testimony of Mr. Anthony Roark, the decedent's supervisor, on Pages 103 and 104 of his deposition on file.

The Staff Hearing Officer finds that the sloped side of the trench/excavation was not sloped by means of sufficient strength to protect the employee working in it. Further, the Staff Hearing Officer find[s] that the slope did not meet accepted engineering requirements.

Specifically, Mr. Renken acknowledges that the Employer knew that the trench/excavation at issue was not OSHA compliant at the time of the accident on page 16 of the Hearing Transcript. Importantly, Mr. Renken acknowledges that the slope was not sufficient to prevent cave-ins and protect the employees working in the trench/excavation on pages 83-86 of the Hearing Transcript.

*The Staff Hearing Officer finds that Ohio Administrative Code Rule 4121:1-3-13 refers to Trenches and Excavations. The Appendix to Rule 3121:1-3-13 [sic] includes Table 13-1, Approximate Angle of Repose for Sloping of Sides of Excavations. The note to Table 13-1 states: "the presence of ground water requires special treatment."*

Additionally, Mr. Renken indicates that the slope was not engineered and probably did not meet acceptable engineering standards. Mr. Renken's deposition states that the slope was not inspected by an engineer or any other qualified person on pages 72-73 of the Hearing Transcript.

The Deposition of Mr. Anthony Roark supports Mr. Renken's conclusions. Specifically, Mr. Roark indicates that he knew that the trench/excavation was not OSHA compliant at the time of the industrial accident on pages 117-118 of his deposition.

Mr. Anthony Roark's deposition explains further on Pages 118-119. Mr. Roark indicates that applicable safety rules and regulations were routinely disregarded. Mr. Roark compares safety regulations to speed limits. He states that although the speed limit may be 55 miles per hour, everyone routinely drives 60 to 65 miles per hour without thinking twice about it.

Additionally, Mr. Roark indicates, on Page 143 of his deposition that the Employer decided to proceed with having employees work in the trench/excavation despite the fact that the Employer knew that the trench/excavation satisfied

neither OSHA safety standards nor the Employer's own safety standards.

The deposition of Mr. Gary Bradford, (Pages 58-60) Field Superintendent, indicates that the Employer knew that both OSHA and the Employer's own safety regulations require all excavation/trenches in excess of twenty feet deep have a protective system which is designed by a professional engineer.

Mr. Bradford's deposition further indicates that the Employer knew the excavation/trench was in excess of twenty feet deep prior to the industrial accident. However, Mr. Bradford states that the Employer decided to put employees in the trench/excavation even though they knew the trench/excavation safety system was not designed by, or inspected by a pro[f]essional engineer on Pages 76-81 of his deposition.

The Staff Hearing Officer acknowledges that a violation of an OSHA regulation does not automatically equate to a violation of a specific safety requirement.

However, the Staff Hearing Officer finds the testimony of Mr. Renken, Mr. Anthony Roark, and Mr. Bradford probative in that these depositions depict the Employer's attitude toward safety. Expressly, these depositions indicate that the Employer was apathetic or careless, if not reckless, in complying with applicable safety rules and regulations.

The Staff Hearing Officer further finds that the above cited depositions establish that the trench/excavation was in soft wet material, *Class C soil with ground water* which exposed employees to the possibility of moving ground or cave-ins. Further, these depositions indicate that the sloped side of the trench/excavation was not sloped or otherwise supported by sufficient means to protect the employees working in them.

The Staff Hearing Officer further finds that the Employer's failure to adequately <u>slope or shore</u> the trench/excavation as required by these sections was the <u>proximate cause</u> of the <u>cave-in and the Decedent's death</u>.

Specifically, the Staff Hearing Officer finds that, <u>had</u> the trench/excavation been sloped or otherwise shored by means of sufficient strength to protect the employee's working in

the trench/excavation, the industrial accident would not have occurred.

Therefore, the Staff Hearing Officer finds violations of Ohio Administrative Code 4123:1-3-13(D)(1) and (2).

Additionally, the above referenced depositions indicate that the slope on the soil side of the excavation/trench did not [meet] accepted engineering standards or accepted engineering requirements for scaling, benching, barricading, rock bolting, wire meshing or other equally effective means.

The Staff Hearing Officer further finds that the Employer's failure to design the trench/excavation in accordance with accepted engineering standards was the proximate cause of the cave-in.

The Staff Hearing Officer further finds that, had the trench/excavation been designed to meet accepted engineering standards, the industrial accident would not have occurred.
The Staff Hearing Officer therefore finds violations of Ohio Administrative Code 4123:1-3-13(E)(1), (2) and (4).

It is therefore ordered that an additional award of compensation be granted to the Injured Worker in the amount of 35 percent of the maximum weekly rate under the rule of State ex rel. Engle v. Indus. Comm. (1944), 142 Ohio St. 425.

(Emphasis sic. and added.)

{¶ 53} 28. On December 3, 2012, relator moved the three-member commission for reconsideration of the SHO's order of October 4, 2012 (mailed October 30, 2012).

{¶ 54} 29. Following a March 14, 2013 hearing before the three-member commission, the commission, by unanimous vote, mailed an order on March 22, 2013 that denies relator's December 3, 2012 motion for reconsideration:

[I]t is the finding of the Industrial Commission that it does not have authority to exercise continuing jurisdiction pursuant to R.C. 4123.52 and State ex rel. Nicholls v. Indus. Comm., 81 Ohio St.3d 454, 692, N.E.2d 188 (1998), State ex rel. Foster v. Indus. Comm., 85 Ohio St.3d 320, 707 N.E.2d 1122 (1999), and State ex rel. Gobich v. Indus. Comm., 103

Ohio St.3d 585, 2004-Ohio-5990, 817 N.E.2d 398. The Employer has failed to meet its burden of proving that sufficient grounds exist to justify the exercise of continuing jurisdiction. Therefore, the Employer's request for reconsideration, filed 12/03/2012 is denied, and the Staff Hearing Officer order, issued 10/30/2012, remains in full force and effect.

{¶ 55} 30. On May 30, 2013, relator, Sunesis Construction, filed this mandamus action.

Conclusions of Law:

{¶ 56} It is the magistrate's decision that this court issue a writ of mandamus, as more fully explained below.

### The Safety Rules

{¶ 57} The following provisions of the Ohio Administrative Code were in effect on the date of death, i.e., July 31, 2005.

Ohio Adm.Code 4123:1-3-13 is captioned "Construction Safety."

{¶ 58} Thereunder, Ohio Adm.Code 4123:1-3-13 is captioned "Trenches and excavations."

{¶ 59} Thereunder, Ohio Adm.Code 4123:1-3-13(B) provides definitions:

(1) "Accepted engineering requirements (or practices)" means those requirements or practices which are compatible with standards required by a registered architect, a registered professional engineer, or other duly licensed or recognized authority.

* * *

(4) "Excavation" means any manmade cavity or depression in the earth's surface, including its sides, walls, or faces, formed by earth removal and producing unsupported earth conditions by reasons of the excavation. If installed forms or similar structures reduce the depth-to-width relationship, an excavation may become a trench.

(5) "Hard compact soil" means all earth materials not classified as unstable.
* * *

(9) "Sides," "walls," or "faces" means the vertical or inclined earth surfaces formed as a result of trenching or excavation work.

* * *

(11) "Trench," when used as a noun, means a narrow excavation made below the surface of the ground. In general, the depth is greater than the width, but the width of a trench at the bottom is no greater than fifteen feet.

(12) "Trench boxes (safety cages, trench shields)" means a shoring system composed of steel plates and bracing, welded or bolted together, which support the walls of a trench from the ground level to the trench bottom and which can be moved along as work progresses.

* * *

(14) "Unstable soil" means earth material, that because of its nature or the influence of related conditions, cannot be depended upon to remain in place without extra support, such as would be furnished by a system of shoring.
Ohio Adm.Code 4123:1-3-13(D) is captioned "Trenches."

{¶ 60} Thereunder, ten enumerated paragraphs set forth ten specific rules pertaining to trenches.  Two of those rules provide:

(1) The exposed faces of all trenches more than five feet high shall be shored, laid back to a stable slope, or some other equivalent means of protection shall be provided where employees may be exposed to moving ground or cave-ins. (See appendix "Table 13-1").

(2) Sides of trenches in unstable or soft material, five feet or more in depth, shall be shored, sheeted, braced, sloped, or otherwise supported by means of sufficient strength to protect the employees working within them. (See appendix "Table 13-1" and "Table 13-2").

{¶ 61} Ohio Adm.Code 4123:1-3-13(E) is captioned "Excavations."  Thereunder, nine enumerated paragraphs set forth nine specific rules pertaining to trenches.  Three of those rules provide:

(1) The walls and faces of all excavations in which employees are exposed to danger from moving ground shall be guarded

by a shoring system, sloping of the ground, or some other equivalent means. (See appendix "Table 13-1 and Table 13-2").

(2) Supporting systems, i.e. piling, cribbing, shoring, etc., shall be designed by a qualified person and shall meet accepted engineering requirements.

* * *

(4) Sides, slopes, and faces of all excavations shall meet accepted engineering requirements by scaling, benching, barricading, rock bolting, wire meshing, or other equally effective means.

### Basic VSSR Law

{¶ 62} It is well-settled that a VSSR award is deemed a penalty to the employer subject to the rule of strict construction with all reasonable doubts concerning the interpretation of the safety standard to be construed against the applicability of the standard to the employer. *State ex rel. Watson v. Indus. Comm.*, 29 Ohio App.3d 354 (10th Dist.1986); *State ex rel. Burton v. Indus. Comm.*, 46 Ohio St.3d 170 (1989).

{¶ 63} It is also firmly established that the determination of disputed factual situations as well as the interpretation of a specific safety requirement is within the final jurisdiction of the commission, and subject to correction in mandamus only upon a showing of an abuse of discretion. *State ex rel. Roberts v. Indus. Comm.*, 10 Ohio St.3d 1 (1984); *State ex rel. Allied Wheel Prods., Inc. v. Indus. Comm.*, 166 Ohio St. 47 (1956); *State ex rel. Volker v. Indus. Comm.*, 75 Ohio St.3d 466 (1996).

{¶ 64} Of course, the commission's authority to interpret its own safety rules is not unlimited. Strict construction does require that the commission's interpretation be reasonable. *State ex rel. Martin Painting & Coating Co. v. Indus. Comm.*, 78 Ohio St.3d 333, 342 (1997). The commission may not effectively rewrite its own safety rules when it interprets them. *State ex rel. Lamp v. J.A. Croson Co.*, 75 Ohio St.3d 77, 81 (1996).

{¶ 65} Specific safety requirements are intended to protect employees against their own negligence and folly as well as provide them a safe place to work. *State ex rel. Cotterman v. St. Marys Foundry*, 46 Ohio St.3d 42, 47 (1989).

{¶ 66} The unilateral negligence defense to VSSR liability derives from *State ex rel. Frank Brown & Sons, Inc. v. Indus. Comm.*, 37 Ohio St.3d 162 (1988), in which an employer was exonerated from VSSR liability because an employee had removed part of a scaffold that had been required by a specific safety requirement. *State ex rel. Quality Tower Serv., Inc. v. Indus. Comm.*, 88 Ohio St.3d 190, 192 (2000).

{¶ 67} However, a claimant's alleged negligence is a defense only where the employer has first complied with relevant safety requirements. *State ex rel. Hirschvogel, Inc. v. Miller,* 86 Ohio St.3d 215, 218 (1999).  A claimant's negligence bars a VSSR award only where the claimant deliberately renders an otherwise complying device noncompliant.  *State ex rel. R.E.H. Co. v. Indus. Comm.,* 79 Ohio St.3d 352, 355, (1997); *Martin Painting* at 339.

### Appendix, Table 13-1

{¶ 68} It can be observed that relator was found to have violated three specific safety rules that reference Table 13-1  Those three safety rules are Ohio Adm.Code 4123:1-3-13(D)(1) and (2) pertaining to trenches and Ohio Adm.Code 4123:1-3-13(E)(1) pertaining to excavations.

{¶ 69} Table 13-1 presents a diagram showing five different degrees of sloping that are adequate for the type of soils described in the diagram.  The description of the soils and the permitted degree of sloping are as follows:

> (1) Solid Rock, Shale, or Cemented Sand And Gravel, Vertical (90 Deg.)
>
> (2) Compacted Angular Gravel — Short Term Exposure (63 Deg.)
>
> (3) Compacted Angular Gravel, (53 Deg.)
>
> (4) Recommended slope for Average Soils (45 Deg.)
>
> (5) Compacted Sharp Sand and well Rounded Loose Sand, (34 Deg.)

(See Respondent Industrial Commission's Brief, 31-32.)

{¶ 70} Aside the above-described five soils and their permitted degree of sloping, Table 13-1 provides two "notes" as follows:

Note: Clays, Silts, Loams, or Non-homogenious soils require Shoring and Bracing.

Note: The presence of ground water requires special treatment.

{¶ 71} Analysis begins with the observation that the SHO's order mailed March 13, 2012 granted rehearing on grounds that the SHO's order of October 6, 2011 contained a mistake of law. Citing to Table 13-1, the SHO's order granting rehearing states in pertinent part:

The order fails to site the type of soil involved, stating only that it was soft material with water and there was an exposure to moving ground. Further, the order does not provide any indication of what evidence shows the amount of sloping that was done to show it was not within the amounts required per the appendix and thus the rule cited as violated.

{¶ 72} In response, as earlier noted, another hearing was held before an SHO on October 4, 2012.

{¶ 73} It is important to note that the SHO's order of October 4, 2012 finds "that the sloped side of the trench/excavation was not sloped by means of sufficient strength to protect the employee working in it. Further, the Staff Hearing Officer finds that the slope did not meet accepted engineering requirements." Thus, the SHO's order of October 4, 2012 does not find that sloping was not permitted at all. To the contrary, the SHO's order finds that the sloping was not of "sufficient strength." The SHO's order fails to determine the degree of sloping that was permitted under Table 13-1.

{¶ 74} The SHO's order of October 4, 2012 does determine the existence of Class C soil with ground water. In that regard, the SHO's order of October 4, 2012 differs from the SHO's order of October 6, 2011 that was vacated pursuant to the granting of rehearing. However, Table 13-1 does not mention Class C soil.

{¶ 75} The SHO's order of October 4, 2012 fails to cite to any evidence or to make any finding upon which a determination of the degree of sloping permitted can be made.

{¶ 76} Here, respondent claimant asserts that, under the first "note" at Table 13-1, relator was required to use shoring and bracing which means that sloping was not acceptable. This assertion lacks merit because the SHO found the existence of Class C

soil.  The SHO did not find the existence of the soils described at the first note at Table 13-1.

{¶ 77} Moreover, the SHO's order of October 4, 2012 not only fails to determine the degree of sloping permitted based upon the type of soil at the trench site, the order also fails to determine the degree of sloping that relator actually employed at the trench.

{¶ 78} Given the above analysis, the SHO's order of October 4, 2012 fails to make findings supported by cited evidence that it was improper or insufficient sloping that proximately caused the wall of the trench to collapse. Moreover, neither the commission nor the claimant here provide any explanation as to what evidence may be found in the record that might support a commission finding that the actual degree of sloping employed at the trench site was insufficient under Table 13-1 for the type of soil at the trench.

{¶ 79} Thus, the magistrate finds that the SHO's order of October 4, 2012 constitutes an abuse of discretion as to the findings that relator violated Ohio Adm.Code 4123:1-3-13(D)(1) and (2) and Ohio Adm.Code 4123:1-3-13(E)(1).

{¶ 80} As earlier noted, the SHO's order of October 4, 2012 finds a violation of Ohio Adm.Code 4123:1-3-13(E)(2), which requires that supporting systems shall be designed by a qualified person and shall meet accepted engineering requirements.

{¶ 81} Also, the SHO's order of October 4, 2012 finds a violation of Ohio Adm.Code 4123:1-3-13(E)(4), which requires that sides, slopes, and faces of all excavations shall meet accepted engineering requirements.

{¶ 82} In the SHO's order of October 4, 2012, the SHO states reliance upon the depositions earlier referenced in the order to support the SHO's conclusion that Anthony Roark, who designed the trench shoring system, was not a "qualified person" as that term is found in the rule.  The SHO also states reliance upon the depositions to support a finding that relator failed to design the trench/excavation in accordance with accepted engineering standards.

{¶ 83} For example, the SHO's order cites to that portion of the Anthony Roark deposition where Roark compares safety regulations to speed limits where everyone routinely drives 60 to 65 miles per hour when the speed limit is 55 miles per hour.  In

another part of his deposition, Anthony Roark admitted that the trench did not satisfy OSHA safety standards nor relator's own safety standards.

{¶ 84} The magistrate notes here that the term "qualified person" in the safety rule is not defined.

{¶ 85} Even if it can be said that Anthony Roark was not a "qualified person" as that term is employed in Ohio Adm.Code 4123:1-3-13(E)(2), that does not by itself support a VSSR award for violation of Ohio Adm.Code 4123:1-3-13(E)(2). As relator here correctly observes, proximate cause is lacking because of the commission's failure to make appropriate findings as to the actual slope as well as the slope permitted under Table 13-1.

{¶ 86} The SHO's order of October 4, 2012 states reliance upon the deposition of Gary Bradford, relator's field superintendent, who testified that he knew that the trench/excavation had not been designed by or inspected by a professional engineer.

{¶ 87} Even if it can be said that the commission cited to some evidence that the trench/excavation did not meet accepted engineering requirements, relator again correctly observes that proximate cause is lacking because of the commission's failure to make appropriate findings as to the actual slope and the permitted slope.

{¶ 88} The magistrate concludes that the commission, through its SHO's order of October 4, 2012, abused its discretion in finding or inferring the presence of proximate cause as to all five of the safety rules at issue.

{¶ 89} Accordingly, it is the magistrate's decision that this court issue a writ of mandamus ordering the commission to vacate the October 4, 2012 order of the SHO and to enter an order that denies the VSSR application. Moreover, it is the magistrate's decision that the writ order the commission to vacate its March 14, 2013 order that found the lack of continuing jurisdiction to grant relator's motion for reconsideration and to enter an order that finds relator's motion for reconsideration to be moot.

/S/ MAGISTRATE
KENNETH W. MACKE

**NOTICE TO THE PARTIES**

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b).